UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

ARMAND ABRAMS, JAMES BACA
AL BENAVIDEZ, AMALIA GALLEGOS,
STEPHEN HIGGINS, DAVID SALAS,
JOHN SHEETS, LOISEL SOTELO,
and LEE WHISTLE, on their own behalf
and on behalf of all others similarly
situated,

    Plaintiffs,

v.                     Civ. No. 10-0872 MV/RHS

CITY OF ALBUQUERQUE,
a municipal corporation,

    Defendant.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on Plaintiffs' Second Motion and Memorandum in Support for Certification of the Collective Action and Court-Facilitated Notice to Similarly-Situated Employees ("Motion for Certification") [Doc. 41]. The Court, having considered the motion, briefs, and relevant law, and being otherwise fully informed, finds that the Motion for Certification is well taken in part and will be granted in part.

**BACKGROUND**

Plaintiffs are all current or former employees of the City of Albuquerque who were in the Management bargaining unit represented by American Federation of State, County and Municipal Employees (AFSCME") Local 3022, a bargaining unit of management series employees employed by Defendant City of Albuquerque. At all relevant times, Plaintiffs' employment was governed by a collective bargaining agreement between AFSCME and the City of Albuquerque.

1

Plaintiffs filed their First Amended Complaint on September 6, 2011, alleging that "during the month of July, 2010 the City . . . unilaterally and without notice reduced Plaintiffs['] hourly wage rates, in violation of the FLSA and state law.  Although the City ultimately provided notice to Plaintiffs that it intended to reduce their hourly wages, it took this action [of reducing wages] prior to notifying the employees."  Am. Compl. ¶ 8.  Plaintiffs further allege that they worked both straight time and overtime during the month of July 2010 but that they were not properly paid for this time because Defendant paid them at the unilaterally-reduced rate.  *See* Am. Compl. ¶ 9.  In support of this allegation, several Plaintiffs submit affidavits indicating that the City did not notify them that their wages would be cut prior to issuance of the pay check containing the cuts.  *See* A. Abrams, S. Higgins, L. Whistle, and A. Benavidez Affidavits, attached as Exhs. 1, 2, 3, & 4 to Plaintiffs' Motion and Mem. in Supp. for Certification of Collective Action and Court-Facilitated Notice to Similarly-Situated Employees.  Plaintiffs allege that Defendant violated the FLSA, 29 U.S.C. §§ 201 *et seq.*, by failing to pay overtime at a rate one-and-one-half times the "regular rate," Am. Comp. ¶ 18, and that Defendant violated Section 50-4-2(b) of New Mexico Statutes Annotated by paying wages at a lower rate than agreed-upon, *see id.* ¶ 19 (citing N.M. Stat. Ann. § 50-4-2(b)).

The parties dispute when the City provided employees with notice of the pay reduction.  In support of its argument that Plaintiffs received notice in advance of the July 1, 2010, reduction, the Defendant City of Albuquerque points to a printout dated October 25, 2012, from its website.  *See* Resp. at 3 (citing Exh. 2, Supp. Exhs. to Def's Mem. of Law in Opp. to Pls' Second Mot. for Certification ("Supp. Exh.")).  The webpage contains a "salary adjustment letter," also identified as an "Interoffice Memorandum," issued by Mayor Richard J. Berry to all employees of the City.  *See* Supp. Exh. 2.  The memorandum is dated July 1, 2010, and informs all employees of the

across-the-board pay cut. *See id.* The memorandum indicates that the pay reductions will begin on July 3, 2010. Defendant also attaches evidence that newspaper articles in the Albuquerque community discussed the impending pay cuts. *See* Resp. at 3 (citing Supp. Exh. 3).

In addition, Defendant City of Albuquerque submits the Declaration of Mary Scott, Deputy Director of the City of Albuquerque's Human Resources Department, which indicates that on June 25, 2010, the City proposed an across-the-board reduction in pay of 2.5% for all employees of AFSCME Local 3022, and on July 7, 2010, the City proposed a reduction of 1.5% for all bargaining unit employees earning $14.4263 per hour or more, with no change for those who were paid below this threshold. *See* Supp. Exh. 1. Local 3022 accepted the latter offer, and the union and the City entered into an agreement memorializing the pay reductions. *See id.* Although the pay provisions were not ratified by Local 3022 until July 7, 2010, the provisions were made retroactive to July 3, 2010 (the date of the new agreement), as is customary when the City and a union enter into an agreement after the expiration of an old agreement. *See id.*

Plaintiff Higgins was a member of Local 3022's bargaining team. *See id.* Plaintiff Higgins attended all bargaining sessions during which the pay reduction was negotiated. *See id.* In April 2010, Plaintiff Whistle was quoted in a newspaper article discussing the impending pay cuts. *See* Exh. 3, Supplemental Exhs. to Resp.

## STANDARD

I.    Fair Labor Standards Act

The FLSA remedies two distinct violations: failure to pay statutorily set minimum wages, *see* 29 U.S.C. § 206, and failure to compensate overtime work at the rate of one and one-half times the regular rate at which the worker is employed, *see id.* § 207. Section 216(b) of the Fair Labor Standards Act ("FLSA") provides in relevant part that "[a]n action to recover the

liability prescribed [for failure to pay statutorily set minimum wages or properly to compensate overtime work] . . . may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and *other employees similarly situated.*"  *Id.* § 216(b) (emphasis added).  Through this Section, "Congress has stated its policy that . . . plaintiffs should have the opportunity to proceed collectively.  A collective action allows . . . plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989) (interpreting the ADEA, which explicitly incorporates the collective action provisions of the FLSA).  Moreover, apart from being mandated by Congress, "[t]he judicial system benefits [from] efficient resolution in one proceeding of common issues of law and fact arising from the same alleged . . . activity."  *Id.* The decision whether to certify a collective action must reflect the purposes of the FLSA.  *See Reab v. Electronic Arts, Inc.*, 214 F.R.D. 623, 627 (D. Colo. 2002) (noting that a district court "must also consider whether certification would serve the purposes and putative benefits of a collective action under § 216(b)").  Plaintiffs bear the burden of establishing that they are similarly situated.  *See Montoya v. Rescue Indus., Inc.*, No. 98-1269, 1999 WL 240247, at *1 (10th Cir. Apr. 20, 1999) (citation omitted).

Section 216(b) does not define the term "similarly situated."  *Thiessen v. Gen. Elec. Cap. Corp.*, 267 F.3d 1095, 1102 (10th Cir. 2001), *cert. denied*, 536 U.S. 934 (2002).  In *Thiessen v. General Electric Capital Corporation*, the Tenth Circuit discussed with approval the *ad hoc* two-step approach to determining whether plaintiffs are similarly situated.  *See id.* at 1102, 1105; *see also Reab*, 214 F.R.D. at 627.  Under this approach, a court makes an initial "notice stage" determination of whether plaintiffs are "similarly situated."  *Thiessen*, 267 F.3d at 1102 (citation omitted).  In doing so, a court "requires nothing more than substantial allegations that the putative

4

class members were together the victims of a single decision, policy, or plan." *Id.* (internal quotations and citations omitted). The notice stage determination is made "using a fairly lenient standard, and typically results in 'conditional certification' of a representative class." *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1214 (5th Cir. 1995), *overruled on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003). At this notice stage, "a court's inquiry is considerably less rigorous than under Rule 23." *Id.* at 1214. "[T]he district court makes a decision—usually based only on the pleadings and affidavits which have been submitted—whether notice should be given to potential class members." *Id.* at 1213-14. Conditional certification in the notice stage, however, is by no means automatic. *See Treme v. HKA Enters., Inc.*, No. 07-1134, 2008 WL 941777, at *2 (W.D. LA. Apr. 7, 2008). "At least some evidence beyond unsupported factual assertions" must be presented. *Id.* at *3; *see also Young v. Cerner Corp.*, 503 F. Supp. 2d 1226, 1229 (W.D. Mo. 2007); *Landsberg v. Acton Enter., Inc.*, No. 05-CV-0500, 2006 WL 745178, at *2, 5 (S.D. Ohio Mar. 22, 2006).

Once a court conditionally certifies a representative class, the court thereafter "makes a second determination, using a stricter standard of 'similarly situated'" "[a]t the conclusion of discovery (often prompted by a motion to decertify)." *Thiessen*, 267 F.3d at 1102-03 (citation omitted). During this "second stage" analysis, a court reviews several factors, including "(1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant which appear to be individual to each plaintiff; [and] (3) fairness and procedural considerations."[1] *Id.* (internal quotation marks and citation omitted). If the district

---

[1] *Thiessen* lists a fourth factor, *i.e.*, whether plaintiffs made the filings required by the Age Discrimination in Employment Act before instituting suit. *See Thiessen*, 267 F.3d at 1103; *see also Gambrell v. Weber Carpet, Inc.*, No. 10-2131-KHV, 2012 WL 5306273 (D. Kan. Oct. 29, 2012). That factor does not apply in FLSA cases. *See id.* (citation omitted).

court determines that the plaintiffs have disparate employment settings or that a defendant has "come forward with 'highly individualized' defenses with regard to each of the various [claims] alleged by [the] plaintiffs," the district court can conclude that decertification is appropriate.  *Id.* at 1103, 1107.

II.     New Mexico Minimum Wage Act

The New Mexico Minimum Wage Act "establishes a floor below which employers cannot pay employees wages and also requires the payment of time and a half for work in excess of a forty-hour workweek." *N.M. Dep't of Labor v. Echostar Communications Corp.*, 134 P.3d 780 (citing N.M. Stat. Ann. § 50-4-22(A), (C)).  Among other enforcement methods, the Act permits a collective action by employees on behalf of "themselves and other employees similarly situated."  Section 50-4-26(B)(2).  Although the Act does not define the term "similarly situated," the New Mexico Court of Appeals has held that the two-step *ad hoc* approach identified by the Tenth Circuit in *Thiessen v. General Electric Capital Corporation* also applies to determining whether employees are "similarly situated" within the meaning of Section 50-4-26(B)(2) of the New Mexico Minimum Wage Act.  *See Armijo v. Wal-Mart Stores, Inc.*, 168 P.3d 129, 145 (N.M. Ct. App.) ("we conclude that the two-tiered/ad hoc approach is the proper standard to apply to collective actions under Section 50-4-26(B)(2) of the Minimum Wage Act"), *cert. denied*, 169 P.3d 408 (2007).  The New Mexico Court of Appeals relied upon the Tenth Circuit's endorsement of the *ad hoc* test in *Thiessen* because Section 50-4-26(B)(2) of the New Mexico Minimum Wage Act contains similar language to Section 216(b) of the FLSA.  *See id.* (citing *Garcia v. Am. Furniture Co.*, 689 P.2d 934, 937-38 (N.M. Ct. App. 1984)).  The Court of Appeals explained that it would "therefore look to federal cases construing § 216(b) of the FLSA for guidance."  *Id.*  The Court of Appeals further confirmed that the "[t]he standard for

6

certification at th[e] notice stage . . . is a lenient one that typically results in class certification." *Brown v. Money Tree Mortgage, Inc.*, 222 F.R.D. 676, 679 (D. Kan. 2004).

## DISCUSSION

I.   Plaintiffs' Motion for Conditional Certification of Collective Action for Notice Purposes

Plaintiffs file their Motion for Certification seeking "conditional certification of the suit as a collective action under 29 U.S.C. § 216(b) for notice purposes." Mot. for Certification at 1. Plaintiffs also argue that "[u]nder the State Wage Law[] it is appropriate for [the] case to proceed as a 'collective action.'" *Id.* at 4. Plaintiffs contend that they have satisfied their initial burden under the two-step *ad hoc* test (applicable to both Plaintiffs' federal and state claims) for determining whether putative class members are similarly situated to Plaintiffs because they have made substantial allegations that putative class members all were subject to the same unilateral city-wide pay cut. *See id.* at 7. Defendant maintains that the Court should deny the Motion for Certification for two reasons:  (1) Plaintiffs have not stated a violation of the FLSA or the New Mexico Minimum Wage Act; and (2) the putative class members are not similarly situated because individualized defenses and other differences between the proposed class members exist. *See* Resp. at 5, 8.

   A.   The Merits of Plaintiffs' Underlying Claims

Defendant invites the Court, "in the interest of judicial efficiency and economy," Resp. at 2, to deny the Motion for Certification because the Plaintiffs have stated no violation of the FLSA or New Mexico state law. Specifically, Defendant contends that it did not violate the FLSA or state law because "it is not illegal to reduce an employee's wage rate where notice is given to the employee." *Id.* at 6 (citing *Conner v. Celanese*, 428 F. Supp. 2d 628, 635 (S.D. Tex. 2006) (employer did not violate the FLSA where it reduced the plaintiff's wage rate with her

7

knowledge); *L.R. Wethington v. City of Montgomery*, 935 F.2d 222, 227-29 (11th Cir. 1991) ("[a]s long as the minimum hourly rates established by Section 6 [of the FLSA] are respected, the employer and employee are free to establish this regular rate at any point and in any manner they see fit")). Defendant maintains that Plaintiffs had notice of the wage reduction because the reduction was bargained collectively through Plaintiffs' union representative and because the Mayor of Albuquerque sent a memorandum to all employees notifying them of the reduction. *See* Resp. at 6-7. Although Plaintiffs argue that the Court should not address the merits of their case in ruling on the Motion for Certification, they also contend, in the alternative, that their claims are viable on the merits because the pay reduction was instituted at the beginning of the July 3, 2010, pay period, the collective bargaining agreement was not signed until after that pay period, *see* Reply at 3, and the City has "posited no evidence . . . that it provided employees with the letter [from the Mayor] prior to the beginning of the relevant pay period," *id.* at 4.

The Tenth Circuit repeatedly has held that a district court should not address the merits of an underlying FLSA claim when ruling on a procedural request for collective action certification. In *Thiessen v. General Electric Capital Corporation*, the Tenth Circuit concluded that the district court erred in decertifying the collective action in part because the district court "made findings regarding [merits-related] issues in the guise of determining whether plaintiffs were "similarly situated." 267 F.3d at 1106-07 (citations omitted). The *Thiessen* court explained that "[b]y doing so, the district court essentially deprived plaintiffs of their right to have the issues decided by a jury, or to at least have the court determine, under summary judgment standards, whether there was sufficient evidence to send the issue to the jury." *Id.* at 1107. In at least two other cases, the Tenth Circuit also has held that the district court should not consider the underlying merits of plaintiffs' claims in deciding whether to certify a class. *See Anderson v. City of Albuquerque*, 690

F.2d 796, 799 (10th Cir. 1982) (reversing and remanding denial of Rule 23 class certification where district court indicated its belief that plaintiff could not prevail on individual claims); *Adamson v. Bowen*, 855 F.2d 668, 676 (10th Cir. 1988) (reversing and vacating denial of Rule 23 class certification and warning that a district court, in making a Rule 23 certification decision, should avoid focusing on the merits of underlying class action, for the merits are "not germane to the question of certification"). Furthermore, the New Mexico Court of Appeals has indicated that it looks to Tenth Circuit case law construing Section 216(b) of the FLSA for guidance in interpreting Section 50-4-26(B) of the New Mexico Minimum Wage Act. *See Armijo*, 168 P.3d at 145. Thus, consistent with the Tenth Circuit's admonition to avoid evaluating the substance of underlying claims when ruling on a procedural motion to certify a collective action, the Court declines to consider the Defendant's merit-based arguments.

      B.      Similarly-Situated Inquiry Under the *Ad Hoc* Test

Plaintiffs maintain that the Court should conditionally certify a class under Section 216(b) of the FLSA and under Section 50-4-26(B)(2) of the New Mexico Minimum Wage Act because Plaintiffs have satisfied their initial burden under the *ad hoc* test by making "substantial allegations" that all members of their proposed class were together the victims of a single decision, policy, or plan." *Thiessen*, 267 F.3d at 1102; *accord Armijo*, 168 P.3d at 145. Specifically, Plaintiffs have alleged (with supporting affidavits) that the Defendant implemented a city-wide pay cut without informing employees of the wage reduction until after the employees had performed the work, and that this single event affected all employees subject to the pay cut in the same way. *See* Mot. for Certification at 7, 8. Defendant City of Albuquerque does not dispute the fact that it instituted a city-wide pay cut, but rather argues that Plaintiffs and other putative class members are not similarly situated because differences exist regarding the timing of the

9

receipt of notice of the wage cut, the rate of the pay cut, and the governing statute of limitations. *See* Resp. at 7-9.

The Court concludes that the undisputed evidence of a city-wide pay cut, which is supported by Plaintiffs' affidavits and is undisputed by Defendant, constitutes a substantial allegation, *see Thiessen*, 267 F.3d at 1102; *Armijo*, 168 P.3d at 144, that the putative class members were together the victims of a single decision by the City.  *Cf. Reab v. Electronic Arts, Inc.*, 214 F.R.D. 623, 629 (D. Colo. 2002) (holding that the "plaintiffs have made substantial allegations that the putative class members were together the victims of a single . . . plan" by alleging that "they and the putative class members were Defendants' employees and received compensation below minimum wage or no compensation from Defendants for the work, labor and services they provided to Defendants"); *Hasken v. City of Louisville*, 213 F.R.D. 280, 282 (W.D. Ky. 2003) (holding that the plaintiffs and putative class members were similarly situated where the defendant city used the "same method for calculating scheduled overtime when compensating all members of the group").   Thus, Plaintiffs have satisfied their initial burden under the *ad hoc* test, and the Court therefore grants the Plaintiffs' motion to conditionally certify this suit as a collective action for purposes of notice only.

The Court is not persuaded to find otherwise by the Defendant's argument that the putative class members were not subject to the same unilateral pay cut because of differences between the proposed class members, "including individualized defenses," which "would make trial of this case on a collective basis unmanageable."  Resp. at 8.   Defendant maintains that the following differences between putative class members exist:  (1) "the notice union employees versus non-union employees received varied," and the notice among different union locals varied, Resp. at 8; (2) the rate of the pay reduction was different for union versus non-union employees and the

10

rate of the pay reduction differed for members of each bargaining unit, *see id.*; and (3) the two-year statute of limitations has expired and thus future opt-in class members' claims must fall within the FLSA's three-year statute of limitations for willful violations, whereas Plaintiffs' claims may fall within the two-year statute of limitations, *see id.* at 9.[2]

The Court is not persuaded by the Defendant's first argument that differences with respect to when the City provided its employees with notice of the wage cut preclude a finding that the putative class members are similarly situated. Defendant contends that an employer may alter an employee's pay if the employer provides the employee with notice of the reduction. *See* Resp. at 6 (citing *Conner v. Celanese*, 428 F. Supp. 2d 628, 635 (S.D. Tex. 2006) ("[t]he party asserting the modification [of an employment contract] bears the burden of proving that the other party agreed to modify the employment terms") (citation omitted); *Robinson v. Food Serv. of Belton, Inc.*, 415 F. Supp. 2d 1227, 1229-30 (D. Kan. 2005) (permissible to reduce the plaintiff's wages to the minimum wage in the final two weeks of employment provided the employer gives the plaintiff notice of the reduction)).[3] Defendant argues that it informed its employees of the wage reduction and this notice therefore is a defense to the Plaintiffs' FLSA claims. *See* Resp. at 7. Defendant

---

[2] The FLSA generally imposes a two-year statute of limitations unless the defendant's violations are shown to be willful, in which case a three-year period applies. *See* 29 U.S.C. § 255(a). To fall under the three-year limitation, the plaintiff must show that "the employer either knew or showed reckless disregard for the matter of whether its conduct violated the statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988); *accord Mumby v. Pure Energy Servs. (USA), Inc.*, 636 F.3d 1266, 1270 (10th Cir. 2011).

[3] *See also Demasse v. ITT Corp.*, 984 P.2d 1138, 1146 (Ariz. 1999) ("[t]he burden is on the employer to show that the employee assented with knowledge of the attempted modification and understanding of its impact on the underlying contract"); *Hunt v. Smyth*, 101 Cal. Rptr. 4, 11 (1972) (the burden of proof is on the party asserting that the contract has been modified and that party must establish that it was the parties' intent to extinguish the prior agreement and to substitute a new one); *Hathaway v. Gen. Mills*, 711 S.W.2d 227, 229 (Tex. 1986) (it is the burden of the employer to prove that he or she unequivocally notified the employee of definite changes in employment terms and that the employee accepted those changes) (citation omitted)

further argues that differences in when individual Plaintiffs received notice necessitate individual inquiries that weigh against conditional certification. *See* Resp. at 6. The Court is not persuaded.

"[O]nce Plaintiffs have met their burden at the notice stage, Defendant cannot overcome [the] showing by arguing that individual issues may dominate." *See White v. MPW Indus. Services, Inc.*, 236 F.R.D. 363, 373 (E.D. Tenn. 2006). Rather, "if after notice to the putative plaintiffs it appears that individual issues do in fact dominate, the Defendant may move the Court to decertify the class." *Thiessen*, 267 F.3d at 1103; *Armijo*, 168 P.3d at 144. It is during this second-stage analysis (prompted by a defendant's motion to decertify), that a district court should apply a stricter standard and may focus on factors such as "whether individual issues would predominate at trial," and whether there are "various defenses available to [a] defendant which appear to be individual to each plaintiff." *Id.* at 1102-03; *see also id.* at 1107 (acknowledging that decertification is appropriate if the presence of highly individualized defenses outweighs the potential benefits in proceeding as a collective action, but reversing the district court's decision to decertify on this ground because the individualized "defenses would not become the focal point until the second stage of trial and could be dealt with in a series of individual trials, if necessary"); *Armijo*, 168 P.3d at 144 ("[a]t the second stage, . . . the court must revisit its initial determination[] under a stricter standard of "similarly situated" and "consider . . . whether the available defenses to the claims are individual to each class member") (citing *Thiessen*, 267 F.3d at 1102-03). Thus, the question when employees received notice is not relevant to the Court's initial certification inquiry, and the Court therefore is not persuaded by the Defendant's argument that differences with respect to this notice preclude conditional certification.

Similarly, the Court is not persuaded that differences regarding the extent of class members' damages preclude certification at this initial stage of inquiry. Defendant contends that differences exist regarding the rate of the pay reduction for union versus non-union employees and the rate of the pay reduction among different local unions. *See* Resp. at 8. These differences cannot negate the fact that Plaintiffs have satisfied their burden under the first part of the *ad hoc* test by setting forth substantial allegations that the putative class members were subject to a unilateral across-the-board pay cut. *Cf. White*, 236 F.R.D. at 373. Furthermore, as one court in the Tenth Circuit has explained, "Generally, damages should not be considered in issuing notice. 'It is well established that individual questions with respect to damages will not defeat class certification . . . unless that issue creates a conflict which goes to the heart of the lawsuit.'" *Reab v. Electronic Arts, Inc.*, 214 F.R.D. 623, 628-29 (D. Colo. 2002) (citations omitted). Defendant has made no showing, and the Court does not perceive, that differences between putative class members regarding the extent of damages has created a conflict. *Cf. id.* (holding that defendants made no showing that individual damages questions created a conflict). Accordingly, the Defendant's argument does not have merit.

Finally, the Court is not persuaded by the fact that the claims of some putative class members may be barred by the FLSA's two year statute of limitations, and that these class members must allege claims that fall within the FLSA's three-year statute of limitations for willful violations. *See* 29 U.S.C. § 255(a). First, the Court notes that in conditionally certifying a collective action under the FLSA, district courts generally apply the longer three-year limitations period for willful violations. *See, e.g., Gayle v. U.S.*, 85 Fed. Cl. 72, 80 (Fed. Cl. 2008) (citing *Goudie v. Cable Comm. Inc.*, No. 08-CV-507-AC, 2008 WL 4628394, at *8 (D. Or. 2008); *Roebuck v. Hudson Valley Farms, Inc.*, 239 F. Supp. 2d 234, 240 (N.D.N.Y. 2002)).

13

Second, to the extent that the Defendant's assertion of a statute of limitations defense against some of the class members would result in judicial inefficiencies, the Court may address this question during its second stage analysis and choose to decertify the class at that time.  *Cf. Thiessen*, 267 F.3d at 1104, 1107; *Armijo*, 168 P.3d at 144.

The authorities cited by the Defendant in support of its argument that individual differences preclude conditional certification likewise are not compelling.  Specifically, Defendant argues that "[c]ertification of a collective action is inappropriate where, as here, there are differences between Plaintiffs and other individual employees that would necessitate individual inquiries."  Resp. at 8.  The authorities Defendant cites in support of this contention, however, are distinguishable because the courts in those cases were not applying a notice stage analysis but rather were applying a more stringent, second-stage analysis.  *See* Resp. at 8-9 (citing *Wright v. Pulaski County*, No 4:09-CV-00065 SWW, 17 Wage & Hour Cas. 2d (BNA) 337, 346 (E.D. Ark. 2010) (decertifying collective action as part of a second stage analysis because the proposed class included employees from three different shifts and several departments or units, and the record revealed that not every employee was required to report to work thirty minutes early); *Espenscheid v. Directsat USA, LLC*, No. 09-CV-625 BBC (W.D. Wis. May 23, 2011) (decertifying class as part of second stage analysis where, even though opt-ins and plaintiffs were subject to the same policies, "in terms of individual experiences . . . [they] were affected by defendants' policies in different ways")).  As this Court has explained, and as Defendant's authorities confirm, differences between putative class members necessitating individual inquiries are properly addressed during the second stage of a district court's certification analysis.  *Cf. Thiessen*, 267 F.3d at 1102; *Armijo*, 168 P.3d at 144; *White*, 236 F.R.D. at 373.  Thus, after discovery has closed and all potential plaintiffs have opted into the action, the Defendant can file a

motion to decertify and the Court will consider whether individual inquiries necessitate decertification at that time.

    C.    Discovery

Defendant argues that if the Court does not deny the Motion for Certification, the Court should stay the motion pending further discovery. Specifically, Defendant seeks discovery from Plaintiffs to learn "whether and when [Plaintiffs] received notice of the wage reduction." Resp. at 10. Defendant contends that these facts "will establish that Plaintiffs are not similarly situated to themselves or others and that individualized issues exist, making trial on a collective basis impossible." Resp. at 10. Defendant additionally maintains that "pending further discovery, the City may move for judgment on the pleadings since[] Plaintiffs['] claims have no merit whatsoever." *Id.* In response, Plaintiffs argue that discovery is not required for the first stage, and that objections based on discovery can be advanced during the second stage. *See* Reply at 5-6. Plaintiffs also maintain that the request for additional discovery is "strange" because the "City claims that it needs discovery from its employees to determine whether it (the City) provided [its] employee[s] with sufficient notice that it was changing the contractual employment arrangement," but "[t]hat information[] is more likely to be possessed by the City, [which is] the entity actually making the change in the terms and conditions of employment." Reply at 6.

The Court already has concluded that individual inquiries regarding receipt of notice should be addressed during the second phase of the two-part *ad hoc* test. *Cf. Thiessen*, 267 F.3d at 1103, 1107; *Armijo*, 168 P.3d at 144. "The second [stage] occurs after all the opt-in forms have been received and discovery has concluded." *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006); *Armijo*, 168 P.3d at 144 (second stage of a court's certification analysis typically follows discovery). Thus, after discovery is complete and Defendant has all the discoverable

15

information it needs, Defendant can move to decertify the class and can make the argument that individual issues regarding notice merit decertification. The Court therefore need not and does not stay its decision on the motion for conditional certification.

II.     Plaintiffs' Motion for Court-Facilitated Notice

Plaintiffs seek court-facilitated notice of this lawsuit to all City of Albuquerque current and former employees who were employed during the pay period of July 3, 2010, through July 16, 2010, and an order approving Plaintiffs' proposed form of notice. *See* Mot. for Certification at 1. Plaintiffs also request an order requiring the City to provide Plaintiffs' counsel with a list (in electronic format, if available) of all current and former employees who worked for the City of Albuquerque for the pay period of July 3, 2010, to July 16, 2010. *See id.* at 12. The Court will address Plaintiffs' requests in turn.

A.      Court-Facilitated Notice and Approval of the Proposed Notice

In support of their motion for court-facilitated notice and approval of their proposed notice, Plaintiffs explain that their form of notice is patterned after the notice approved by the district court in *Reab v. Electronic Arts, Inc.*, 214 F.R.D. 623, 627 (D. Colo. 2002). Plaintiffs point out that the Supreme Court has recognized that the benefits of a collective action accrue to Plaintiffs only if they "receiv[e] accurate and timely notice concerning the pendency of the collective action. *See* Mot. for Certification at 4 (citing *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989)). Furthermore, Plaintiffs explain that district courts have a managerial responsibility to oversee the joinder of additional parties so as to assure that the task is accomplished efficiently, *see id.* at 10 (citing *Hoffman-La Roche*, 493 U.S. at 170-71), and that district courts, by monitoring preparation and distribution of notice, can ensure that notice is timely, accurate, and informative, *see id.* at 11 (citing *Hoffman-La Roche*, 493 U.S. at 170).

16

Defendant does not dispute the benefits of court-facilitated notice, but rather argues that the proposed notice itself is deficient because the class definition is overbroad and is not limited to non-exempt employees under the FLSA, employees who are hourly employees, employees who are members of Local 3022, or employees who worked overtime during the relevant time frame. *See* Resp. at 10. Defendant asks the Court to give the parties a "reasonable amount of time to negotiate the terms of an appropriate notice, rather than have a notice issued to thousands of present and former City employees with dissimilar factual situations." *Id.*

Plaintiffs have not responded to the Defendant's argument that their notice is overbroad, and the Court will not hypothesize as to what arguments the Plaintiffs might assert in rebuttal to this claim. Considering only those arguments advanced by Defendant, and without any argument or evidence before the Court to controvert the Defendant's contentions, the Court concludes that the class definition is overbroad. As Defendant points out, the proposed class definition does not exclude certain obvious categories of employees who are exempt under the FLSA. *See generally* 29 U.S.C. § 213(a).[4]

Because the Defendant has identified at least one reason why the proposed class may be unnecessarily overbroad,[5] the Court denies the Plaintiffs' request for court-facilitated notice and

---

[4] In contrast, the Court is not persuaded by the Defendant's argument that the class definition is over-inclusive because it does not limit the class to employees who were members of Local 3022. The Court already has concluded, for purposes of its initial conditional certification, that the Plaintiffs have set forth substantial allegations that the Defendant implemented a pay cut that affected other employees *city wide*. Thus, the class definition is not overly broad simply because it includes employees who were not members of Local 3022.

[5] The Court declines, at this time, to consider whether the class is also overbroad because it is not limited to employees who worked overtime during the relevant time frame. Defendant reasons that because the proposed wage cut did not apply to employees making less than $14.4263 per hour, *see* Supp. Exh. 1, and there is no allegation that any employees made less than minimum wage as a result of the pay reduction, the Plaintiffs do not state an FLSA claim for failure to comply with the minimum wage and only state a claim for violation of the FLSA's overtime

for approval of their proposed form of notice. Furthermore, consistent with the Defendant's request, the Court orders the parties to meet and confer concerning the form and substance of a proposed notice. *See, e.g.*, *Pinkston v. Wheatland Enters., Inc.*, No. 11-CV-2498, 2013 WL 1191207, at *4 (D. Kan. Mar. 22, 2013); *Pegues v. CareCentrix, Inc.*, No. 12-2484-CM, 2013 WL 1896994, at *4 (D. Kan. May 6, 2013). If the parties reach an agreement, then they must submit the proposed notice to the court for approval within fourteen days of this Memorandum Opinion and Order. *See id.* If the parties are unable to reach an agreement, Plaintiffs must file a motion within fourteen days of the date of this Memorandum Opinion and Order seeking approval of their proposed form of notice. *See id.* Defendant must then file its objections to Plaintiffs' proposed notice and submit an alternate proposed form of notice within seven days of Plaintiffs' motion seeking approval of their proposed notice. *See id.*

      B.      <u>Production of Names of Potential Collective Action Members</u>

Plaintiffs also ask this Court for an order compelling Defendant to "produce the names and last known addresses for each member of the potential collective action, as defined herein." Mot. for Certification at 1. Courts often grant this type of request in connection with a conditional certification of an FLSA collective action. *See Siewmungal v. Nelson Mgmt. Grp. Ltd.*, No. 11-CV-5018, 2012 WL 715973, at *5 (E.D.N.Y. Mar. 3, 2012) (discovery of contact information is appropriate at the notice stage of FLSA actions); *Chowdhury v. Duane Reed Inc.*, No.

---

provisions. *See* Resp. at 9. Thus, Defendant maintains that Plaintiffs' proposed form of notice is overbroad because it does not limit the class to those employees working overtime during the relevant time frame. *See id.* The Court notes, however, that in addition to their FLSA claim, Plaintiffs also bring a state law action pursuant to Section 50-4-2(B) of New Mexico Statutes Annotated. Plaintiffs contend that the Court can certify a class for their Section 50-4-2(B) claim pursuant to the collective action provision set forth in Section 50-4-26(B)(2) of the New Mexico Minimum Wage Act. *See* Mot. for Certification at 5, 9-10. Plaintiffs, however, have not established that their Section 50-4-2(B) claim is subject to collective treatment under Section 50-4-26(B)(2) of the New Mexico Minimum Wage Act.

06-Civ-2295 (GEL), 2007 WL 2873929, at *2 (S.D.N.Y. Oct. 2, 2007) (same). As the Court already has concluded, however, the Plaintiffs' proposed class definition is overbroad, and therefore Plaintiffs' request for the names and last known addresses for each member of the potential collective action defined by Plaintiffs is likewise overbroad. Thus, the Court limits the scope of the production. Specifically, the Court orders the Defendant, within ten days of the date the Court approves a proposed form of notice, to produce to Plaintiffs a list of the names and last known addresses (in electronic format, if available) of all current and former employees who worked for the City for the pay period of July 3, 2010, to July 16, 2010, *and* who also meet the class definition set forth in the form of notice to putative collective action members ultimately approved by this Court pursuant to the procedures set forth in Section II.A, *supra*. *Cf. Pegues*, 2013 WL 1896994, at *4 ("To facilitate mailing of the notice, defendant, within fourteen days of the court approving the notice, must provide to plaintiff a list of all employees constituting the class, with their last known addresses, phone numbers, social security numbers, and dates of employment in an agreeable format for mailing").

## CONCLUSION

For the foregoing reasons, **IT THEREFORE IS ORDERED** that Plaintiffs' Second Motion and Memorandum in Support for Certification of the Collective Action and Court-Facilitated Notice to Similarly-Situated Employees [Doc. 41] is hereby GRANTED IN PART and DENIED IN PART as follows:

(1) Plaintiffs' request to conditionally certify this suit as a collective action under 29 U.S.C. Section 216(b) for notice purposes is hereby GRANTED;

(2) Plaintiffs' request for court-facilitated notice of this lawsuit to all City of Albuquerque current and former employees who were employed during the pay period of July 3, 2010, through July 16, 2010, and for Court approval of the form of Plaintiffs' proposed notice is hereby DENIED.

(3) Plaintiffs' request for an order compelling Defendant to produce the names and last known addresses (in electronic format, if available) of all current and former employees who worked for the City for the pay period of July 3, 2010, to July 16, 2010, is GRANTED IN PART as follows: Defendant shall produce to Plaintiffs a list of the names and last known addresses (in electronic format, if available) of all current and former employees who worked for the City for the pay period of July 3, 2010, to July 16, 2010, and who also meet the class definition set forth in the form of notice to putative collective action members ultimately approved by this Court pursuant to the procedures set forth in Section II.A *supra*; Defendant shall produce these names and last known addresses within ten (10) days of the date the Court approves the form of notice.

**IT FURTHER IS ORDERED** that the parties shall meet and confer concerning the form and substance of a proposed notice of this lawsuit to putative collective action members, and if the parties reach an agreement, then they must submit the proposed notice to the court for approval within fourteen (14) days of this Memorandum Opinion and Order; if the parties are unable to reach an agreement, Plaintiffs must file a motion within fourteen (14) days of the date of this Memorandum Opinion and Order seeking approval of their proposed form of notice, and Defendant must then file its objections to Plaintiffs' proposed notice and submit an alternate proposed form of notice within seven (7) days of Plaintiffs' motion seeking approval of their proposed notice.

Dated this 24th day of September, 2013.

_____
MARTHA VÁZQUEZ
UNITED STATES DISTRICT JUDGE